MAJESTIC MFG. CO. v. KOKENES et al.

No. 5470.

District Court, N. D. Alabama, S. D.

June 19, 1946.

Kingsland, Rogers & Ezell, of St. Louis, Mo., and Benners, Burr, Stokely & McKamy, of Birmingham, Ala., for plaintiff.

Chester Austin, of Birmingham, Ala., for defendant.

LYNNE, District Judge.

### Findings of Fact.

1. The present action is a suit for trade mark infringement and unfair competition in which an injunction only is sought, profits and damages as prayed for in the Complaint having been waived by the plaintiff by stipulation four months before the trial.

2. The plaintiff, Majestic Manufacturing Company, is a corporation of the State of Missouri with its principal place of business in St. Louis, Missouri.

3. The defendants, Aristides Kokenes and Constantine Kokenes, are citizens of the State of Alabama, and do business in Birmingham, Alabama, under the name of Majestic Hotel & Restaurant Supply Company.

4. The suit is brought under and based on U.S.C.A., Title 15, §§ 96, 97, 98, 99 and 100, for infringement of the plaintiff's trade mark "Majestic," registered August 8, 1905, through United States Registration Certificate No. 45,252 (renewed), registered March 6, 1923, through United States Registration Certificate No. 165,083 (renewed), and registered September 11, 1923, through United States Registration Certificate No. 172,804 (renewed). The suit is also based upon the law of unfair competition, charging infringement of plaintiff's common law rights in the name "Majestic" by the defendants' use of that

name. The value of the plaintiff's right in the name and the good will associated therewith is in excess of Three Thousand Dollars ($3,000) and said right and good will are jeopardized by the defendants' use of the name. There is diversity of citizenship of the parties; the matter in controversy exceeds the sum of Three Thousand Dollars ($3,000), exclusive of interest and costs.

5. Since prior to 1891 to date, the plaintiff has manufactured and sold cooking equipment, specifically, commercial and domestic stoves and ranges burning coal, wood or gas, coffee urns, griddles, toasters, heaters, cooking ware, ovens, broilers, waffle irons, steam tables, metal sinks, kitchen tables, and the like.

6. In 1891 the plaintiff adopted the trade mark "Majestic" and applied it to its manufactures, and since 1891 to date the plaintiff has affixed the said trade mark "Majestic" and its corporate name "Majestic Manufacturing Company," prominently displayed, to all of its said manufactures sold in both intrastate and interstate commerce, and has established nationwide good will in respect to both the trade mark "Majestic" and its corporate name "Majestic Manufacturing Company" which is one of the most valuable assets of the plaintiff.

7. The plaintiff merchandises its products through approved distributors, jobbers, and dealers located throughout the United States, including the State of Alabama, which have averaged some five thousand (5,000) in number throughout the said years 1891 to date.

8. The plaintiff's products have enjoyed national distribution since prior to 1900 to date, including substantial sales throughout such years in Alabama and the neighboring Southern States; the "Majestic" range for many years has been one of the best known ranges in the United States, including the Southern States.

9. The available sales records of the plaintiff show that between the years 1911–1945, both inclusive, the plaintiff sold nearly Sixty Million Dollars ($60,000,000) worth of merchandise; that between the years 1920–1945, both inclusive, the plaintiff expended Eight Hundred Seventy-Five Thousand Dollars ($875,000) in advertising its products, a sum which is exclusive of dealer advertising in local newspapers from a mat service furnished them by the plaintiff; and that between the years 1929–1945, both inclusive, the value of the sales of the plaintiff's products in Alabama amounted to Two Hundred Seventy Thousand Dollars ($270,000); in Tennessee, Three Hundred Fifty-Two Thousand Dollars ($352,000); in Georgia, Two Hundred Eighty-Five Thousand Dollars ($285,000); in Mississippi, One Hundred Sixteen Thousand Dollars ($116,000); and in Florida, One Hundred Fourteen Thousand Dollars ($114,000).

10. The plaintiff does a substantial annual business in repair parts for its "Majestic" cooking equipment, averaging during the last thirty years close to Two Hundred Fifty Thousand Dollars ($250,000) per year; it is the policy of the plaintiff to ship such spare parts directly to the user with minimum delay to restore cooking service of the affected unit with all possible speed, thereby to maintain and to enhance the plaintiff's valuable good will.

11. The orders for repairs of plaintiff's stoves and other equipment are handled by plaintiff's organization in a highly accelerated routine, in order to minimize the period of inoperation of plaintiff's cooking equipment in the hands of plaintiff's customers.

12. The plaintiff has a valuable right in the name "Majestic" as applied to cooking equipment, and a valuable good will in connection therewith.

13. The plaintiff manufactures high quality merchandise which sells at the highest price level in comparison with similar merchandise of other manufacturers.

14. The products of the plaintiff are long-used items; the "Majestic" stoves, ranges, urns and the like continue in service for many years, and, hence, each unit serves as a long-term advertisement of the plaintiff's trade mark "Majestic" and its corporate name "Majestic Manufacturing Company."

15. The plaintiff daily receives, and for many years past has received, mail intended for it which is addressed to "Majestic Company", "Majestic Range Co.," "Majestic Stove Co.," "The Great Majestic," "Majestic Machine Co.," etc., in addition to mail addressed "Majestic Manufacturing Company," which mail originates throughout the United States.

16. Plaintiff has sold, and continues to sell, cooking equipment under the name "Majestic" and "Majestic Manufacturing Company." Plaintiff has sold large volumes of commercial cooking equipment to hotels and restaurants. Since the end of the war, plaintiff has temporarily discontinued the sale of commercial equipment due to market conditions, but continues its sales of domestic cooking equipment and repair parts for both domestic and commercial cooking equipment under the name "Majestic" and "Majestic Manufacturing Company", and has plans to resume the manufacture and sale of commercial equipment under said names as soon as the market restabilizes.

17. The defendant, Aristides Kokenes, settled in Birmingham, Alabama, in 1927, and started a business of selling coffee and spices which he called the "Majestic Coffee Company"; in 1928 he enlarged his business to include chinaware; then coffee urns, commercial stoves, and other hotel and restaurant equipment were added. In late years, the sales of coffee by defendants have been reduced to only nominal quantities.

18. Aristides Kokenes initially sold his merchandise throughout Alabama, and then enlarged his territory to include other Southern States, namely, Tennessee, Georgia, Florida, Mississippi, South Carolina, and North Carolina; the defendant, Constantine Kokenes, joined his father Aristides in the business around 1936.

19. In 1939 or 1940, the defendants changed the name of their business from "Majestic Coffee Company" to "Majestic Hotel and Restaurant Supply Company" because their public buying hotel and restaurant supplies interpreted the name "Majestic Coffee Company" as a coffee or food selling organization, and did not recognize it as designating a seller of hotel and restaurant supplies. The change was made by defendants for the purpose of clearly showing that their company was not merely a coffee or food selling organization but was a hotel and restaurant supplies company.

20. The name "Majestic Coffee Company," as used by defendants, does not of itself suggest the sale of hotel and restaurant supplies.

21. In changing their name from "Majestic Coffee Company" to "Majestic Hotel and Restaurant Supply Company" in 1939 or 1940, the defendants experienced no inconvenience beyond surcharging unused stationery, invoices, and the like, and changing the store front sign.

22. In 1943, the year the present suit was filed, one sign on the defendants' store front read "Stoves, griddles, booths, stools, coffee urns, steam tables, dish washing machines, etc.," a second sign read "Majestic Hotel & Restaurant Supply Co."; the same advertising and name appeared on the defendants' stationery then in use; coffee, very little of which was being sold by the defendants at the time suit was instituted, and spices were no longer prominently advertised.

23. In recent years the defendants have sold annually an average of about One Hundred Thousand Dollars ($100,000) worth of merchandise, of which 10% has been stoves.

24. The defendants are jobbers or distributors dealing in hotel and restaurant supplies, and their company is of the same type as the jobbers and distributors that handle the merchandise of the plaintiff.

25. To some coffee urns and stoves and other hotel and restaurant supplies, the defendants attached decalcomanias which initially bore the name "Majestic Coffee Co.," and later "Majestic Hotel and Restaurant Supply Co."

26. Since at least as early as 1929 the defendant, Aristides Kokenes, knew of the plaintiff; in that year he ordered a repair part for a "Majestic" coffee urn from the plaintiff for one of his customers as an accommodation service, the order being over the signature "Majestic Coffee Company."

27. Throughout the years from 1929 to 1940, the defendants ordered additional repair parts for "Majestic" stoves and other items from the plaintiff as accommodations for their customers throughout the defendants' trade territory, numbering some 25 to 30 items and totaling some Two Hundred Dollars ($200) in value; all orders were over the signature of "Majestic Coffee Company." Plaintiff thereby had knowledge of the existence of the "Majestic Coffee Company."

28. In early 1941 the defendants made the first order of a repair part for a "Majestic" unit from the plaintiff over the signature of "Majestic Hotel and Restaurant Supply Company" on "Majestic Coffee Company" stationery surcharged with the name "Majestic Hotel and Restaurant Supply Company," which order was followed by several similar orders during the ensuing two to three years. Also in early 1941, defendants made inquiry of plaintiff concerning obtaining a dealership in plaintiff's stoves. By these orders and inquiry, plaintiff had knowledge of the existence of the "Majestic Hotel and Restaurant Supply Company." The total amount of such orders from plaintiff, both under the name "Majestic Coffee Company" and "Majestic Hotel and Restaurant Supply Company," is only a few hundred dollars.

29. The existence of the defendants as the "Majestic Hotel and Restaurant Supply Company" first came to the attention of the governing and policy making officials of the plaintiff early in 1943, who immediately referred the matter to the plaintiff's patent attorneys; the plaintiff's attorneys at once wrote the defendants to cease their use of the name "Majestic Hotel and Restaurant Supply Company" in view of plaintiff's business and its long use of its trade mark "Majestic" and its corporate name "Majestic Manufacturing Company" in connection therewith.

30. It is a manifest likelihood that the public dealing with defendants operating under the name "Majestic" in connection with the sales of hotel and restaurant supplies will assume that the defendants are selling products of the plaintiff, or are otherwise officially connected with the plaintiff; and that the same will irreparably damage the plaintiff's good will in connection with the name "Majestic," and will injure the public.

31. The present action was brought by the plaintiff November 11, 1943, after all efforts to get the defendants to cease using the name "Majestic Hotel and Restaurant Supply Company" had failed.

32. Defendants have not shown by any proof whatever that the lapse of time in notifying them and bringing this suit was unreasonable; nor that plaintiff should have taken action against them as the "Majestic Coffee Company" during their use of that name. To the contrary, the defendants established that the name "Majestic Coffee Company" did not adequately denominate a dealer in hotel and restaurant supplies. Defendants offered no proof whatever that they suffered any damage by any lapse of time in plaintiff's notifying them or bringing this suit, nor that their position was in any respect different, as of the dates of notice and suit, than it was as of their dates of first use of the accused name. Damages and profit recovery being entirely waived, their position, if any, in connection therewith has no effect. There has been no unreasonable delay by plaintiff, and no damage to or change of position by defendants between their dates of first use and the dates of notice and suit.

33. Some inquiries were made at the defendant's place of business for "Majestic" stoves.

34. No willful or actual deception of customers was practiced by the defendants.

## Conclusions of Law.

1. The Court has jurisdiction of the parties and of the subject matter.

2. The plaintiff is the owner of the trade mark "Majestic" as applied to stoves, ranges, coffee urns, griddles, heaters, and other cooking equipment enumerated in and covered by its United States Certificates of Registration Number 45,252 (Renewed), Number 165,083 (Renewed), and Number 172,804 (Renewed), the property

therein, and of the good will established thereunder, both under the common law and the federal trade mark statutes.

3. The merchandise sold by the defendants is of the same class and descriptive properties as that sold by the plaintiff.

4. Likelihood of confusion is the test in determining whether trade mark infringement and unfair competition exist; the fact of anyone being actually deceived is unnecessary, and actual intent to defraud need not appear.

5. The evidence as a whole clearly furnishes reasonable grounds for the belief that there is a strong probability that persons may be deceived by the use by the defendants of the name "Majestic Hotel and Restaurant Supply Company" into thinking that there is a connection between the plaintiff and the defendants.

6. The sale by defendants of their merchandise with labels fixed thereon, or attached thereto, bearing the name "Majestic" constitutes an infringement of plaintiff's trade mark rights under its United States Trade Mark Registrations.

7. The sale by defendants of their merchandise under the company name of "Majestic Hotel and Restaurant Supply Company" constitutes an infringement of the common law rights of plaintiff in the name "Majestic" and is unfair competition.

8. The plaintiff is chargeable with notice of the type of business in which the defendants were engaged when it received the first repair part order on "Majestic Coffee Company" stationery surcharged with and signed by "Majestic Hotel and Restaurant Supply Company" in early 1941; the originally used name, "Majestic Coffee Company," would not stimulate the plaintiff to investigate the defendants' business since it failed to indicate the actual nature of defendants' business.

9. The plaintiff did not notify the defendants of its position until two years after knowledge of the defendants' business was legally imputed to it, but delay alone is not sufficient to bar granting of an injunction; the defendants here have shown no damage, no change of position in reliance upon the plaintiff's failure to act; the plaintiff is not guilty of laches or estoppel.

10. The plaintiff is entitled to the permanent injunction prayed for in the complaint.